[No. 14608.  Department Two.  May 6, 1918.]

NEBRASKA INVESTMENT COMPANY, *Respondent*, v.
JAMES E. CORLETT *et al.*, *Appellants*.[1]

COMPROMISE AND SETTLEMENT—ITEMS INCLUDED.  Where an item included in a suit had been dismissed as a subject of controversy therein, without prejudice to an independent action, and the suit went to final judgment on other items and appeals were taken, a compromise of the appeals and judgment did not include the item dismissed from the suit.

JUDGMENT—BAR—MATTERS INCLUDED.  A judgment on consent, vacating the judgments appealed from and all appeals taken, pursuant to a settlement, and not mentioning an item dismissed without prejudice, is not a bar to a subsequent action thereon; nor would the holder be barred by failure to appeal, since it could accept the ruling allowing independent action.

SAME — BAR — PARTIES CONCLUDED.  Such consent judgment on settlement of the suit is not binding upon the defendant as to the item dismissed out of the case without prejudice, where such item was dismissed because it was the personal obligation of the manager of the company, who was not a party to the suit and had no interest in the judgment compromised.

BILLS AND NOTES—ACTION ON DUE BILL—DEFENSES.  In an action on a due bill given as the personal obligation of the manager of a company, the fact that the company had been given credit on its books for the amount is no defense to the action against the manager.

Appeal from a judgment of the superior court for King county, Brawley, J., entered June 8, 1917, upon findings in favor of the plaintiff, in an action on a due bill, tried to the court.  Affirmed.

*Peters & Powell,* for appellants.
*Donworth & Todd,* for respondent.

CHADWICK, J.—This is an action on a due bill:

"Dec. 17, 1910.
"Due Nebraska Investment Company, the sum of Three thousand dollars.          James E. Corlett."

[1]Reported in 172 Pac. 851.

The defense is payment through the settlement of a suit between the Nebraska Investment Company and the Moresby Island Lumber Company, Limited, in British Columbia.

Appellant James E. Corlett was the principal stockholder and managing director of the Moresby Island Lumber Company, Limited, a British Columbia corporation. This corporation had timber holdings in British Columbia which respondent and its associates desired to purchase. On October 5, 1910, they took an option, paying then $26,000, and during the following six months they made payments aggregating $41,500. One of the sums making up this amount was the $3,000 which respondent is seeking to recover in this action.

Appellant Corlett, as managing director of the lumber company, conducted all the negotiations and received payments on its behalf. W. I. Coleman, the secretary and treasurer of respondent, acted for it and its associates and made all the payments. Pending the negotiations between respondent and the Moresby Island Lumber Company, Limited, Corlett asked for a personal loan of $3,000. Coleman declined to make the loan to Corlett, but was willing to advance the money as a payment on the option. He drew a check payable to Corlett. Just then Coleman was called from his private office, and when he returned Corlett had gone with the check and in lieu thereof had left a due bill drawn with his own hand, as above quoted. When Coleman returned he read the due bill and telephoned Corlett that the amount of the check would have to be treated as an advance on the timber contract, a payment to the Moresby Island Lumber Company, Limited. Corlett advised him that that would be all right. Corlett testified on the trial of this case that he had carried it in his account as part of the money furnished

by respondent to the Moresby Island Lumber Company.

Respondent and its associates failed to exercise their option and the Moresby Island Lumber Company, Limited, claimed a forfeiture. The respondent and one Phelps, who had an interest in the transaction, sued the lumber company in the supreme court of British Columbia for $41,500, the amount of the several payments made by Coleman to Corlett, including the $3,-000 evidenced by the due bill. Upon a garnishment auxiliary to its suit, $41,500 was paid into the registry of the court to await a determination of the suit. Corlett was not made a party.

At the trial the plaintiffs contended that the $3,000 was paid on the option, and the lumber company contended that it was a personal loan to Corlett. Corlett so testified at the trial. The trial judge held that the option money was forfeited and gave judgment in favor of the lumber company.

On an appeal to the court of appeals of British Columbia, the judgment was reversed except as to the item of $3,000. The appellate court held that, as it was doubtful whether the $3,000 was paid on the option or loaned to Corlett personally, and as the burden of proof was on the plaintiff, the $3,000 should be eliminated and judgment entered for $38,500, the ruling of the court being in part as follows:

"The item of $3,000 stands on a different footing to that of the other items. I confess some doubt as to how this item should be treated. The witness Coleman, for the plaintiffs, said that it was paid to Corlett, the defendant's manager, for the same purposes as were the other sums. It is very clear that Corlett applied to Coleman for this sum for his own personal use, and told Coleman so. That sum was paid to Corlett, who gave a personal due bill for it, but if Coleman did not intend to accept it as such, he should have had the

matter put right at once. I think it best to resolve what doubt I have in favour of the defendant, the onus of proof being upon the plaintiffs, and léave the plaintiffs, if they be so advised, to pursue their remedy against Corlett.''

From this judgment the lumber company appealed to the King in Council, or, as more generally spoken, The Privy Council at London. Neither party appealed from the order of the court eliminating the issue as to the $3,000. While the appeal was pending, a settlement was agreed upon, and what is called a ''consent order'' was entered in the supreme court of British Columbia on December 4, 1914. By the terms of the consent order it was decreed the action was settled without costs to either party

''and that all judgments entered herein be vacated. And this court doth further order that the moneys now standing in court to the credit of this action, together with all accrued interest thereon shall be paid out to the firm of Bodwell & Lawson and W. J. Taylor jointly, who shall pay one-half of the said money to Eberts & Taylor as the solicitors for the plaintiffs and one-half thereof to the solicitors for the defendant; and each of the parties hereto consenting and undertaking thereto, this court doth further order that the said parties shall by their respective solicitors dismiss and vacate, without costs to either party, any appeals that have been taken from the judgment of this court, whether to the Court of Appeal or to His Majesty in Council, and that all matters in difference between the parties hereto and at issue in this action or in the said appeals shall be deemed to have been determined by the settlement to be carried out under this order.''

The appeal to the Privy Council was dismissed.

Although presented in various ways, the determinative points in the case are whether the item now sued on was included in the settlement; or, if not, whether

respondent is concluded by the settlement as it is evidenced by the order of the court which we have just quoted.

That the amount now demanded was not settled by the parties or carried into the claim of the respondent against the lumber company, we are quite convinced. The Nebraska Investment Company had included it as an item in its suit against the lumber company. It denied its liability and offered appellant as a witness to sustain its contention. He testified that it was his personal obligation and that his company was in no way bound. The court held that the lumber company was not liable and dismissed the item as a subject of controversy, leaving to the plaintiffs, "if they are so advised, to pursue their remedy against Corlett," which ruling under our practice would be called a dismissal without prejudice of the cause of action in so far as it was based upon the $3,000 item.

As we have said, both parties to the action accepted the ruling of the court. The appeal was directed to the judgment of $38,500, and the items going to make up this amount would have been the only items which the Privy Council would have considered. The judgment, in so far as it eliminated the item of $3,000, in the absence of a cross-appeal, was final and conclusive upon the parties. Nor is respondent to be barred of a recovery because it did not appeal. It might have applied for a cross-appeal, but the allowance of an appeal under the English law is a matter of grace and not of right, and furthermore, it was content, as is evidenced by the bringing of this action, to accept the ruling of the court and bring its suit against appellant, who is said to have been, and is now presumably, solvent. Nor was there any reason why appellant should pursue the lumber company with respect to this item, when at the trial counsel for respondent under-

took to inquire into it, counsel for the lumber company interrupted the proceedings, saying:

"But there was one item of $3,000 that was not company money, the rest of it was company money. . . . Mr. Corlett is ready to pay that amount. . . . That is one of the adjustments that had to be made. You need not bother about that, you can have that at any time you ask for it—that $3,000, you don't need to prove anything about it."

Appellant was present and made no remonstrance.

While the appeal was pending and negotiations for a settlement were on, appellant prepared a memorandum of the items going into the settlement for submission to respondent. In contradiction of his former attitude he included the item of $3,000 as a payment made by the lumber company. The manager of respondent, to whom the proposed stipulation was submitted, refused to consider it because it included the item of $3,000, and the whole matter was referred to their solicitors, who fixed up a stipulation to meet the settlement. Of course, appellant insists that the $3,000 was an item in the settlement, and some circumstances arising in subsequent conduct give slight color to his contention, but these are explained and can be given no probative force when measured by the record of the entire transaction.

Nor do we think that respondent is concluded by the terms of the order entered upon the stipulation. At the time it was entered, appellant was in no sense a party to the action. The item of $3,000 had been held to be his obligation and had been dismissed out of the case. There was no identity of interest. He had no personal concern in the judgment against his company, nor had it any interest in the item which is the subject of controversy. *Douthitt v. MacCulsky*, 11 Wash. 601, 40 Pac. 186. Appellant knew that the respondent had

refused to consider the item of $3,000 as a subject of further negotiation or settlement and, if as he now contends, it was to be included, it would have been the part of prudence on his part to have had it specifically mentioned.

It is further contended that respondent should not be permitted to recover because appellant testified that the lumber company had since been given credit for the $3,000. But respondent has no concern with the mutual dealings of appellant and his company. Appellant is the managing director and it was within his power to keep his books and the books of his company in his own way. He said in testifying: "The three thousand dollars was paid to me for my own use, for my individual business. . . . It was deposited to my own account and it was used by me." What account was charged, or why the company should be credited for a $3,000 item personal to the manager, is not for respondent to inquire into, for surely it is not to be denied a recovery if appellant has dealt with a third party to his disadvantage.

Affirmed.

ELLIS, C. J., MOUNT, and HOLCOMB, JJ., concur.